WILLIAM A. DEAN, Appellant, *v.* ANDREW R. CLARK and Another, Respondents.

*Bond of indemnity against taxes given to induce a taxpayer to vote for bonding a town — void as against public policy.*

An instrument — reciting the making of a request to commissioners, appointed under chapter 373 of the Laws of 1866, on the date of the execution thereof, to procure a certain loan, that the person making such request was recorded in the assessment roll of a certain town and that he feared that a tax might be levied upon his property appearing on said roll to pay the principal and interest on the bonds to be issued by such commissioners — provided for the payment by the obligors of all such taxes.

*Held,* that such instrument might properly be deemed an agreement to indemnify such person against the damages he might sustain in the way of taxation in consequence of his procuring (with others) the commissioners to obtain such loan;

That, as it presumptively appeared from the recitals of such instrument that it was given in consideration of such person's requesting the commissioners in writing to borrow a sum of money on the faith and credit of such town and to issue town bonds therefor, such instrument was not enforcible.

A contract of indemnity to a taxpayer against taxes, resulting from his vote in favor of the bonding of the town of which he is a resident, has a tendency to influence his action and hence injuriously affects the public interests.

APPEAL by the plaintiff, William A. Dean, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Columbia on the 24th day of January, 1894, upon the dismissal of the complaint directed by the court after a trial at the Columbia Circuit before the court and a jury.

*John C. Durdess*, for the appellant.

*Cadman & Peck*, for the respondents.

PUTNAM, J. :

Section 1 of chapter 373, Laws of 1866, provided that on the application in writing of twelve or more freeholders in any town in either the counties of Rensselaer or Columbia, it should be the duty of the county judge of the county where such town was situated, or any justice of the Supreme Court at Special Term, to appoint not more than three freeholders to carry into effect the purposes of the act.

Section 2 authorized said commissioners to borrow on the faith and credit of such town such sum of money as a majority of the taxpayers therein representing a majority of the taxable property thereof should determine, not exceeding twenty-five per cent of the assessed valuation of said town. The act further provided that the authority conferred by section 2 should only be exercised upon condition that the consent of such majority of the taxpayers appearing upon the assessment roll of 1865 should first be obtained in writing, acknowledged before a justice of the peace, which writing should be filed, with a copy of the assessment roll annexed, in the office of the clerk of such town and the county clerk of the county. The act further provided for the raising of the money by taxes to pay the principal and interest of the money borrowed in pursuance of its provisions.

Under the said act three persons were appointed commissioners for the town of New Lebanon, Columbia county, and the plaintiff, a taxpayer of said town, with others comprising a majority in number, and representing a majority in amount of the taxable property of said town appearing upon the assessment roll of 1865, consented to and requested in writing that the said commissioners should borrow on the faith and credit of said town the sum of $100,000. On the same day the defendants, Andrew R. Clark, Henry D. Gay and others, executed to plaintiff a bond in the penalty of $1,500, with the following conditions:

"WHEREAS, the above-named Dean has this day signed a certain request to Ransom II. Gillett, Moses Y. Tilden and Joseph K. Royce, commissioners appointed under the first section of the act of the Legislature of the State of New York, approved the fourth day of April, 1866, entitled 'An act to authorize any town in the counties of Columbia or Rensselaer to aid in the completion of the Lebanon Springs railroad' (a copy of which is hereto annexed), that the said commissioners in conformity with the said second section of said act, shall borrow on the faith and credit of said town one hundred thousand dollars, and issue town bonds therefor; and whereas the said Dean is recorded upon the assessment roll of said town, for the year 1865, for the sum of thirty-five hundred and fifty dollars; and whereas the said Wm. A. Dean fears a tax may be levied upon the property appearing upon the said roll to pay the interest that shall fall due upon the town bonds, as well as the principal of the same, when they shall become due.

"Now, therefore, the condition of this obligation is such that if the said obligors shall save harmless and indemnify the said Dean from all payments he may make on account of any taxes levied upon the property appearing upon the said assessment roll in any year, and which tax shall be levied and collected for the purpose of paying interest or principal of the town bonds issued as aforesaid, then this obligation shall be void, otherwise remain in full force and effect."

The action was brought on this undertaking, the plaintiff claiming to recover the sum of $1,500.

It was shown that bonds of the town were afterwards issued, in pursuance of the request and consent of plaintiff and other taxpayers, for the sum of $100,000 borrowed thereon, and it was

admitted on the trial that plaintiff had been compelled to pay $1,000 in taxes levied on his property to apply upon the principal and interest of such bonds.

The trial court held that the instrument upon which the action was brought was not supported by any legal consideration, and was in contravention of public policy, and dismissed the complaint.

The learned counsel for the appellant insists that it was an unwarranted assumption on the part of the trial court that the promise of indemnity to plaintiff contained in the instrument above set out was made in inducement and in consideration of plaintiff's signing the request to the commissioners to borrow on the faith and credit of the town $100,000; that such assumption was not justified by the language of the bond or by the evidence given on the trial.

It does not appear that any such position was taken by the counsel on the trial. An exception was allowed to the decision of the court dismissing the complaint on a statement of facts made by the trial judge. The plaintiff on the trial made no objection or criticism upon the assumption of the court as to the facts, and made no request to go to the jury on any question in the case.

We think, however, that the assumption of the trial judge was justified by the language of the instrument in question. It recites the making of a request to the commissioners by plaintiff on the day of the execution of the paper; that he was recorded on the assessment roll of said town for the year 1865 for $3,550; that he feared a tax might be levied upon his property appearing on said roll to pay the principal and interest on the bonds to be issued by the commissioners, and the undertaking provided for the payment by the obligors of all such taxes. The instrument in question may properly be deemed an agreement to indemnify plaintiff against the damages he might sustain in the way of taxation in consequence of procuring (with others) the commissioners to obtain the loan. The paper said: *Whereas*, you have requested the commissioners to borrow $100,000, and fear a tax may be levied on your property to pay the principal and interest on such loan, therefore, the obligors agree to pay such taxes. The word "whereas" is defined to mean "the thing being so that," "considering that things are so." The undertaking, therefore, said, considering that you have requested the town commissioners to borrow $100,000, and fear a tax may be levied on

your property to pay said loan, we agree to indemnify you against said tax. We think it presumptively appeared from the recitals of the instrument in question, that it was given to plaintiff in consideration of his requesting the commissioners in writing to borrow said sum of $100,000 on the faith and credit of the town, and to issue town bonds therefor. It is a well-settled principle that whatever may be fairly implied from an instrument in writing is, in judgment of law, contained in it. (*Rogers* v. *Kneeland,* 13 Wend. 114.) The language of the instrument in question fairly implied that it was made to indemnify plaintiff from the consequences of his act in requesting the town commissioners to bond the town for $100,000.

Counsel for plaintiff contends that the instrument in question — if given in consideration of plaintiff's signing the request to the commissioners to issue bonds of the town or to indemnify him from the payment of taxes on his property, resulting from the issuing of said bonds — did not contravene any principle of public policy, hence, was not illegal, and that the court erred in dismissing the complaint.

The Legislature, by section 2 of chapter 373 of the Laws of 1866, gave authority to the commissioners appointed in the town of New Lebanon, pursuant to section 1 of said act, to borrow on the faith and credit of the town such sum of money, not exceeding twenty-five per cent of the assessed valuation of the town, as a majority of the taxpayers, representing a majority of the taxable property therein should determine upon, on condition that the consent of such majority of the taxpayers appearing on the assessment roll of 1865 should first be obtained in writing. In pursuance of the authority so conferred by sections 1 and 2 of the act of 1866, on the request of plaintiff and other taxpayers, the sum of $100,000 was borrowed and the town bonded therefor. It was clearly a matter of public concern in said town whether or not $100,000 should be borrowed for the benefit of the Lebanon Springs railroad and bonds issued therefor, to pay which, and the interest thereon, the citizens of the town would be afterwards necessarily taxed. It was a question affecting the public interests of the town which plaintiff and other citizens and taxpayers were compelled to pass upon. Such an expenditure on behalf of the town might or might not be beneficial to it. It might be for the interest of the taxpayers to pay the tax assessed against them on account of such loan in consideration of the

benefit they would derive from the proposed railroad, or it might not. The question submitted to the taxpayers was one of great public importance to the town. Plaintiff's action in the matter affected not only himself but other taxpayers. It affected those citizens who refused to make any request to the commissioners. And also others who did consent to the bonding of the town but were induced to do so by the action of the plaintiff. We think public policy required the unbiased and uninfluenced judgment of the several taxpayers on the question submitted to them pursuant to the statute. The action of the taxpayers in determining whether the $100,000 should be loaned might be deemed similar to an act of legislation. The Legislature, instead of passing on the question of the loan, submitted it to the taxpayers of the town, a majority of whom voted in its favor. By the bond of indemnity the obligors agreed to pay plaintiff the amount he should be taxed in consequence of the proposed loan. Such a bond naturally and necessarily affected his judgment as to the propriety and necessity of the loan. It was like a bribe to him with a view of affecting his action as a citizen on a matter affecting the public interest of the town. The question submitted to the taxpayers was whether the taxable property of the town should be mortgaged, so to speak, to secure a loan of $100,000 for the purpose of aiding the construction of the Lebanon Springs railroad. Plaintiff, as a citizen, was called upon to vote upon the proposed measure, which, as we have said, was of great importance. The agreement of the obligors to indemnify him from the payment of taxes to result in consequence of his vote and that of the other taxpayers, was very much like an undertaking to pay him $1,000 for his vote.

By such a procedure a minority of the taxpayers of any town could have induced a majority to vote for the bonding of the town under the act, when the judgment of the majority of such taxpayers, if uninfluenced, was opposed to the project. We think public policy required that the vote of each taxpayer of the town of New Lebanon on the proposal to bond it for the benefit of the Lebanon Springs railroad should be uninfluenced, and that, hence, the promise of the defendants to indemnify plaintiff against taxes resulting from his vote was not enforcible.

We think the views above suggested are sustained by the authorities. In *Sedgwick* v. *Stanton* (14 N. Y. 291) it is held " that con-

tracts illegal at common law as being contrary to public policy are such as injuriously affect or subvert the public interest  *  *  * such contracts as by their terms or contemplated manner of performance must work some mischief affecting the body politic." In 19 American and English Encyclopædia of Law, 565, quoted by counsel for the appellant, public policy is defined as follows: " That principle of the law which holds that no one can lawfully do that which has a tendency to be injurious to the public, or against the public good, may be termed the policy of the law, the public policy in relation to the administration of the law."

It seems clear that a contract of indemnity to a taxpayer against taxes resulting from his vote in favor of the bonding of his town has a tendency to influence his action, and, hence, injuriously affect the public interests. As bearing on the question involved see, also, *Stanton* v. *Allen* (5 Den. 434, 442); *Smith et al.* v. *Applegate* (2 Zabr. 352 and cases cited); *O'Hara* v. *Carpenter* (23 Mich. 410); *Thomas* v. *Caulkett* (57 id. 394); *Noyes* v. *Day* (14 Vt. 384); *Gibbs* v. *Smith* (115 Mass. 592).

Our conclusion, therefore, is that the trial court made the proper disposition of the case, and that the judgment should be affirmed, with costs.

MAYHAM, P. J., and HERRICK, J., concurred.

Judgment affirmed, with costs.